IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MI FAMILIA VOTA EDUCATION FUND, ET AL.,

Plaintiffs,

vs.

DONALD J. TRUMP, ET AL.,

Defendants.

CV No. 20-3030
Washington, D.C.
October 29, 2020
4:09 p.m

TRANSCRIPT OF TELEPHONIC MOTIONS HEARING PROCEEDINGS
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:

Ronald A. Fein
FREE SPEECH FOR PEOPLE
1320 Centre St.
Ste. 405
Newton, MA 02459
(617) 244-0234
Email: rfein@freespeechforpeople.org

Michael D. Lieder
Cyrus Mehri
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW
Suite 300
Washington, D.C. 20036
(202) 446-1909
Email: mlieder@findjustice.com
Email: cmehri@findjustice.com

APPEARANCES CONTINUED:

For the Defendants:

Joshua E. Gardner
James J. Gilligan
UNITED STATES
DEPARTMENT OF JUSTICE
Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-7583
Email:
joshua.e.gardner@usdoj.gov
Email:
james.gilligan@usdoj.gov

Cameron Thomas Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
(703) 243-9423
Email:
cam@consovoymccarthy.com

Court Reporter:

William P. Zaremba
Registered Merit Reporter
Certified Realtime Reporter
Official Court Reporter
U.S. Courthouse
333 Constitution Avenue, NW
Room 6503
Washington, D.C. 20001
(202) 354-3249

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

P R O C E E D I N G S

THE COURT: Judge Leon here.

DEPUTY CLERK: Good afternoon, Your Honor; good afternoon, Counsel.

The United States District Court for the District of Columbia is now in session, the Honorable Richard J. Leon presiding. God save the United States and this Honorable Court. Please come to order.

Your Honor, this afternoon we have a telephonic motions hearing. This is Civil Action No. 20-CV-3030, Mi Familia Vota Education Fund, et al., versus Donald J. Trump, et al.

Will speaking counsel for the plaintiff please identify himself and his colleagues for the record.

MR. FEIN: Thank you.

Your Honor, this is Ronald Fein for the plaintiff.

And I'm joined by co-counsel, Cyrus Mehri of Mehri & Skalet, as well as Michael Lieder.

And also on the papers, but listening through the public line with pro hac vice motions pending, are John Bonifaz, Ben Clements, Gillian Cassell-Stiga, Matthew Brinckerhoff, Jonathan Abady, Sam Shapiro, and Marissa Benavides.

THE COURT: Thank you.

Who will be speaking for the plaintiff, sir?

MR. FEIN: Myself. Ron Fein. Thank you, Your Honor.

THE COURT: All right.

DEPUTY CLERK: Counsel for the federal parties, in their official capacity, please identify himself and his colleague for the record.

MR. GARDNER: Good afternoon, Your Honor.

This is Josh Gardner with the United States Department of Justice on behalf of the federal defendants in their official capacity.

I will be doing the presentation today.

And with me is my colleague, James Gilligan.

THE COURT: Welcome, Counsel.

DEPUTY CLERK: Will counsel for the President, in his individual capacity, please identify himself for the record.

MR. NORRIS: Good afternoon, Judge Leon.

This is Cam Norris. I'm an attorney at Consovoy McCarthy PLLC. And I'm here on behalf of President Trump in his individual capacity.

THE COURT: Mr., did you say, "Morris" or "Norris"?

MR. NORRIS: "Norris" with an "N", like Chuck.

THE COURT: All right.

Mr. Norris, would it be fair to say the arguments

that the defense is advocating for would cover your arguments, or do you need make any arguments separate and apart from them?

MR. NORRIS: Your Honor, I think there is significant overlap. There may not be 100 percent overlap. But I imagine my segment could be very brief.

THE COURT: You can have five minutes.

MR. NORRIS: Thank you.

THE COURT: All right.

Mr. Fein, you can have 20 minutes. You can reserve up to five minutes for rebuttal. But if you use more than 15 minutes in your opening argument, it will be charged against your rebuttal. Do you understand?

MR. FEIN: Yes, Your Honor.

THE COURT: Yeah.

Mr. Gardner, you can have 15 minutes. All right?

MR. GARDNER: Thank you, Your Honor.

THE COURT: Mr. Fein, it's your case; you get to go first.

MR. FEIN: Thank you, Your Honor.

Ron Fein for the plaintiffs.

And I would like to reserve five minutes for rebuttal.

THE COURT: That's fine.

MR. FEIN: When the President of the United States

threatens to deploy law enforcement to polling places --

THE COURT: Now, hold on, Mr. Fein. Hold on.

We've got to straighten something out right at the outset, okay?

Are you seeking a TRO, a PI, or both?

MR. FEIN: We're seeking both.

A TRO would be, obviously, the first step, to be followed by a PI potentially, as well as declaratory relief?

THE COURT: Whoa, whoa. Slow down.

So isn't it a fact that if the TRO is not granted, the PI is moot?

Your concern is the impact on voting, as I understand your pleadings, the impact on voting that's occurred and is occurring as a result of statements by the President, Attorney General Barr, and Homeland Security, Secretary Wolf.

Unless I'm misunderstanding your pleadings, your concern is between now and next Tuesday.

What basis would you have to have a PI after next Tuesday?

MR. FEIN: We don't think we'd have a basis for a PI after Tuesday. We could have a PI before Tuesday.

THE COURT: Yeah, well, that's -- under these circumstances, with the limited briefing we've had and the time we've had, you know, you all chose to bring this on the

eve of the election, it's only four or five days away.

Most of the statements that you're attributing to in your pleadings took place over the last three or four or five months. You chose when to bring this and so you have to take the consequences of it.

There won't be any PI. If the Court grants the TRO hypothetically, that will cover the period, including the election.

So the TRO should solve whatever problem you think you have between now and next Tuesday, unless I'm missing something.

Do you want to add anything to that analysis?

MR. FEIN: No, Your Honor. I believe the TRO would solve the problems between now and next Tuesday.

THE COURT: Okay.

So you're seeking a TRO. Go ahead.

MR. FEIN: Thank you, Your Honor.

When the President threatens to deploy law enforcement to polling places and his subordinates announce that they are mobilizing the same tactical teams and militarized immigration squads that they brought to bear on citizens a few months ago; and when he threatens millions of voters that if they try to vote by mail, in accordance with the laws of their state, they'll take action, whether in court or otherwise, to block their votes from being

delivered or counted.

Is that normal, proper, and lawful, or does it cross the line? We're seeking declaratory judgment that it does cross the line and a few narrow but powerful items of relief.

As to all three defendants, President Trump, AG Barr, and Secretary Wolf, we request an order that they be prohibited from deploying federal law enforcement agents at or near polling places for the purpose of impeding or delaying voters, or other improper purposes, except where necessary, as demonstrated by specific evidence pertaining to a particular polling place to repel armed enemies of the United States.

We request that these three defendants be restrained from ordering federal agents or employees to block the delivery of ballots or interfere in the counting of ballots or from taking any actions that may limit the speed and reliability of mail delivery for just the next two weeks.

And finally, we request the relief that pertains specifically to President Trump; first, that he'd be restrained from using official White House public-communications channels to make statements that lawful mail-in votes will not be counted; and finally, that he be restrained from urging individuals to bring weapons to

polling places, block access to polling places, intimidate voters, or otherwise interfere with voting. This relief is needed to redress violations of one of our nation's most important statutes: The Voting Rights Act of 1965.

That statute, passed by Congress after years of experience with intimidation of voters by white-supremacist groups, local sheriffs, and sometimes state officials, provides that no person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to do so, any person for voting, attempting to vote, for urging or aiding anyone else to vote.

And as explained in *Olagues* --

THE COURT: Mr. Fein, Section 11(b) of the Voting Rights Act creates a private right of action against officials of the United States. Has any court in the United States, from the Supreme Court down, ever ruled such?

MR. FEIN: No court has explicitly decided that question. It was raised in the --

THE COURT: Well, how about implicitly?

No one explicitly has ever addressed it.

How about implicitly? Who do you say has implicitly decided that?

MR. FEIN: Your Honor, the question arises so rarely, because it is essentially unprecedented for federal officials to engage in this type of conduct. The only case

where it was even raised in a published opinion was the *Olagues* case from the Ninth Circuit.

But the statute says "no person, whether acting under color of law or otherwise." And the Supreme Court's decision in *Bostock* teaches that we interpret words according to their plain meaning. And Congress knows how to distinguish between color of state law, as opposed to just color of law, because --

THE COURT: Well, while we're on the subject of Congress --

Mr. Fein, while we're on the subject of Congress, Congress knows how to waive sovereign immunity.

Where's the waiver of sovereign immunity doctrine here as it relates to bringing lawsuits of this kind against officials of the United States -- against the United States itself or its agencies? Where's the waiver?

MR. FEIN: As this Court recognized in *Quaid versus Kerry*, Section 702 of the APA waived sovereign immunity for equitable relief.

THE COURT: What court recognized that?

MR. FEIN: This Court did in Quaid versus Kerry with respect to Section 702 of the APA.

THE COURT: *Quaid*. What judge?

MR. FEIN: Your Honor.

THE COURT: What case is that? What year was

that?

MR. FEIN: *Quaid versus Kerry*. Relatively recently.

Again, that's not with respect to Section 11(b) of the Voting Rights Act in particular, but, rather, the general principles that Section 702 waives sovereign immunity with respect to equitable relief, except where they're strictly precluded by some other statute.

THE COURT: I don't think that's on point.

MR. FEIN: Well, even setting that aside, Your Honor, the Larson-Dugan exception applies where an officer exceeds statutory authority, and certainly no federal official has the statutory authority to intimidate voters.

So if we're correct on the merits, then the actions of the federal officers here are beyond statutory authority and the Larson-Dugan exception would apply.

The maximalist doctrine of impunity that the government argues is not founded in the case law. So whether it's under Section 702 or under Larson-Dugan, there is a waiver of sovereign immunity.

If I may continue, the --

THE COURT: Yeah. Why don't you address the standing issue, because you have a substantial issue of that kind, too.

MR. FEIN: Thank you, Your Honor.

Standing, it's important to note that we have three plaintiffs here; and, of course, if any one of them has standing, that ends the inquiry.

In the case of Mi Familia Vota Education Fund, which is the organizational plaintiff, the organization has had its mission frustrated and has had to divert resources, as supplemental declarations from its chief executives help flesh some of that out, because due to the conduct from the defendants at issue here, they've had to divert a substantial percentage of their budget and staff to answering questions from worried voters around the country.

So instead of doing the activities that they would normally be doing at this late stage of the election season, they're having to go with people who are afraid to go to the polls or afraid that they're going to encounter armed men, or who are afraid to cast their votes by mail, because they're afraid that these votes won't be counted.

With respect to the individual --

THE COURT: How do you square that with the public reporting?

In fact, I just heard it on NPR, that there is record voting turnout in every state in the country right now, in the pre-election-day voting, either in actual, live voting, at polling stations that have been set up to

accommodate COVID, or in the form of absentee ballots, or just the mail-in ballots. There are record numbers in every state right now in the United States.

How do you square that fact, that's being publicly reported on a daily basis, with your fear of entry that is, at best, speculative or conjectural?

MR. FEIN: We're not saying that every single individual in the United States has been so intimidated that they're not going to vote at all.

The fact that some voters aren't intimidated, or manage to vote despite being intimidated by the defendants, doesn't mean that it wasn't intimidating, any more than we would say in a criminal obstruction-of-justice case, that if a defendant threatened a witness, that the witness managed to testify anyway, then there was no intimidation.

So we do know that the conduct is objectively intimidating. And we know that Mi Familia Vota has been receiving calls from all over the country from voters who are, in fact, intimidated, who meet the statutory definition of being made timid or fearful by the conduct at issue here. And that creates organizational standing, because the organization is now being forced to divert resources to addressing these calls. Some of those voters may overcome their intimidation, and there may be other voters who aren't intimidated at all. But the ones that Mi Familia Vota is

representing are.

THE COURT: You have five minutes left in your 15 minutes. You should spend a little time discussing likelihood of success on the merits.

MR. FEIN: Thank you, Your Honor.

As explained in the decision from the Southern District of New York just last night, which we've provided to the Court via notice of supplemental authority, the prohibition in Section 11(b) is expansive. And the tools of modern voter intimidation are not always done as in horses and burning crosses, but, rather, now include computers and modern technology. And contemporary means of voter intimidation, said Judge Marrero, may be more detrimental to free elections and call for swift and effective judicial relief.

The case here is actually stronger. The New York case involves a robocall threatening the possibility of debt collection and criminal summons.

What we have here is per se intimidation. The President has threatened to send sheriffs and law enforcement and everybody to the polling places.

That invokes cases like *United States versus McLeod*, which concern voter intimidation via baseless arrest and prosecutions.

And even earlier, *Joyner versus Browning*, where a

governor entered upon a campaign of terror by deploying state troopers so that numerous electors would stay home, and those who attempted to vote would be subjected to intimidation.

The apparatus of the Federal Government, including Bureau of Prisons' riot-control teams that were brought to bear on citizens in our streets and the full communicative power of official government channels being used for disinformation has a tremendous intimidating effect.

The Founders hoped that the Republic would be a city on a hill, where every citizen can sit under his vine and fig tree with no one to make them afraid, but that is not the situation here.

I want to emphasize, the definition of "intimidate" is different from the definition of "coerce." And the statute uses three terms: Intimidate, threaten, or coerce.

"Coerce" is the maximum. It means to restrain or control or dominate, nullifying individual will.

THE COURT: Let me ask you this: What is the connection between the statements that Attorney General Barr and Secretary Wolf have made and the Voting Rights Act?

MR. FEIN: The statement --

THE COURT: What statement -- those statements mostly related to the George Floyd incident.

MR. FEIN: The statements at issue mostly come from President Trump.

Action in this case has come from Attorney General Barr and the Secretary Wolf in the deployment of armed units.

And it's worth noting -- and this happened just as we were following our reply, that units under the command of Secretary Wolf have been announced, that they're being mobilized and activated to be deployed on Election Day.

So the President's threats of employing law enforcement and everybody to the polling places are not idle threats, and the voters are entitled to believe them.

A "threat" simply means an expression of an intention to do something bad. "Intimidate" means to create a fear.

And these are thresholds that are lower than coerce. But we're not alleging coercion. We're alleging intimidation.

And taking La Familia Vota Education Fund, a lot of the people that it works with are new citizens voting for the time. Maybe they came from countries in Latin America, where they had every reason to be frightened of the military or national security police.

And that's what distinguishes our Republic from other countries. And so a threat to send law enforcement to

polling places resonates with them.

And the same applies to absentee --

THE COURT: Well, under 11(b), you have to demonstrate a specific intent to intimidate or attempt to intimidate.

Where's the evidence of a specific intent to intimidate or an attempt to intimidate by the Attorney General Barr or Secretary Wolf?

MR. FEIN: The Secretary Katzenbach -- sorry, Attorney General Katzenbach's testimony to Congress said that there was no intent requirement in Section 11(b); that people were deemed to intend the natural consequences of their actions.

THE COURT: Since when -- excuse me. When I speak, you have to stop, okay? My court reporter can't take us both down at the same time, Mr. Fein. You understand?

MR. FEIN: Yes, Your Honor.

THE COURT: Yes.

You should know better; you clerked in the federal court.

Now, since when is the testimony of a former Attorney General of the United States before Congress controlling in any way with regard to whether or not they have a specific intent? He didn't draft the legislation; he didn't even vote on the legislation.

What is your basis to use that as a reliance -- as a basis for reliance of a Court?

MR. FEIN: Because Congress opted not to include an intent requirement in the statute.

THE COURT: Well -- but you're telling me this Court should rely upon the testimony of Nicholas Katzenbach as his basis to say that that doesn't exist?

Your 15 minutes are up; you'll have five minutes on rebuttal.

MR. FEIN: Thank you.

THE COURT: We'll hear from Mr. Gardner next.

MR. GARDNER: Thank you, Your Honor.

This is Mr. Gardner on behalf of the federal defendants in their official capacity.

I'll try to be brief. And I want to respond directly to the arguments plaintiffs just made. And I think it makes sense to start with sovereign immunity.

Plaintiffs contend that the APA somehow supplies the waiver of sovereign immunity. To be sure, that can't possibly be the case with respect to the President of the United States in his official capacity. The President is not a federal agency.

The Court, in *Franklin versus Massachusetts*, in *Swan v. Clinton*, expressly redirected the notion that the APA could be a waiver of sovereign immunity with respect to

the President. So that can't be a viable basis for waiver.

I think in recognition of that, plaintiffs then turn to the Larson-Dugan doctrine to say, well, we don't need a waiver of sovereign immunity.

But that requires a showing of ultra vires conduct. And plaintiffs haven't even attempted to show that. Rather, they're claiming a bare violation of a statute.

But bare violations of a statute are not, by definition, ultra vires. And, therefore, Larson-Dugan could not possibly apply here to resurrect the claim.

Another issue with respect to the President, Your Honor, which I know plaintiff addressed in the brief but didn't get to address here is, there is no basis to attach equitable relief against the President in his official capacity. We cite case after case to support that proposition in the Supreme Court, the D.C. Circuit, and the D.C. District Court.

And plaintiffs' response, as I understand it, is twofold; one, they disagree with the D.C. Circuit's opinion, which is largely irrelevant for your purposes; and, two, they argue that our view of the inability to apply injunctive and declaratory relief to the President is somehow at odds with *U.S. versus Nixon*.

But that case is completely inapposite. That was

a criminal case in which the President was challenging a subpoena under Rule 17(c) of the Federal Rules of Criminal Procedure and argued that executive privilege justified not responding.

That had nothing to do with whether injunctive or declaratory relief could be applied against the President in an official capacity. And, therefore, plaintiffs have no basis to argue for an injunction or a declaration against the President.

That gets us quickly to a private right of action. As plaintiffs have conceded on this call, they cannot cite to a single case that has held that an implied cause of action against federal officials exists under 11(b).

They cite to, in their reply brief, legislative history that they claim somehow supports the supposition that there could be an implied right of action.

But, in fact, the legislative history is to the contrary. And we cite to, in our brief, *South Carolina versus Katzenbach*, where they indicate that the legislative history was concerned with state and local governments violating the Voting Rights Act, not the Federal Government. And, of course, under the Supreme Court's current jurisprudence, private rights of action to enforce federal law must be created by Congress.

Now, plaintiffs refer to *Olagues versus*

*Russoniello* case, the Ninth Circuit case, they refer to that in their reply brief on page 8, support for the proposition that courts have impliedly and explicitly recognized the private right of action under Section 11(b).

But *Olagues* did no such thing. In that case, which was a suit against a U.S. Attorney, alleging that a voter-fraud investigation was voter intimidation that the District Court dismissed on the grounds that the VRA created no cause of action against federal officials.

The Ninth Circuit affirmed that decision on grounds that plaintiffs had not shown an intent to intimidate, and expressly did not reach the cause-of-action issue.

So there is no case that the government is aware of and plaintiffs certainly have cited to no case to support the proposition that there is an applied private right of action against the Federal Government under Section 11(b).

That takes us to standing, Your Honor. And I think I can be very brief about this.

Plaintiffs still have not presented any evidence their fears are anything but speculative.

And let me start with Mi Familia Vota first. We showed that they lack both Article III standing and prudential standing, because they did not allege or show injury-in-fact and have not made the showing required to

establish a standing to assert the rights of third-party voters now before the Court.

Now, I think this is important that MFV does not even attempt, in plaintiff's reply, to show that it meets the prudential requirements of third-party standing. So it's conceded that one. And it has no chance of success on its plate.

Accordingly, the Court need not even reach the issue of MFV's Article III standing. But even if it were, it's clear that what they are arguing is a simple diversion of resources, which the D.C. Circuit has repeatedly held cannot be a basis for Article III standing.

Now, in their reply brief, they rely principally on the *League of Women Voters v. Newby*, a D.C. Circuit decision from 2016, to support their organizational standing to sue.

Now, that case involved a challenge to a decision by the federal Election Assistance Commission to allow addition of proof of citizenship requirements that the federal forums use to register voters of the National Voter Registration Act. There, the requirement significantly inhibited the *League of Women Voters* voter registration drives. And registration plummeted, because potential voters often didn't have citizenship documents with them. The lead volunteers didn't have a way to copy them; or

voters balked at letting lead volunteers copy their sensitive citizenship documents.

Mi Familia Vota doesn't allege any comparable impediments to conducting its activities. Indeed, it contends in both its original and supplemental declarations that education and outreach efforts are continuing. So they can't establish standing.

As to the two individual plaintiffs, again, they do not contest the points that speculative injury is insufficient to confer standing.

Plaintiffs argue that because Congress enacted a right to vote without intimidation, it's enough for them to claim that they feel intimidated in connection with voting to apply standing.

But as the Supreme Court said in *Spokeo*, it is settled that Congress cannot part with free-standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.

And the Supreme Court has held in *Amnesty International* and *Laird v. Tatum* that these kind of speculative injuries are insufficient as a matter of law to establish standing. So for all of those reasons, Your Honor, plaintiffs cannot establish a likelihood of success on the merits.

And that takes us to the actual claim itself.

As you note, Your Honor, the overwhelming majority of alleged acts of intimidation or statements made by Acting Secretary Wolf and the Attorney General have no nexus whatsoever to voting, let alone voting intimidation.

In fact, for Acting Secretary Wolf, they don't allege anything that's related to voting. They talk about things like portraying Antifa as a terrorist organization, or sending DHS personnel to Portland, Oregon, to protect the federal courthouse from violent opportunists or protests. None of those things have anything to do with voting, let alone voting intimidation.

And similarly with the Attorney General, again, claims about the portrayal of Antifa, or comments about the Black Lives Matter movement, none of those things have anything to do with voting, let alone voting intimidation.

Similarly, even with the President, many of the alleged actions or statements have nothing to do with voting.

His Executive Order concerning the use of federal law enforcement to deal with violent opportunists or in protests, nothing to do with voting.

He's alleged failure to disclaim groups such as the Proud Boys. Nothing to do with voting.

His announcement that Antifa would be designated as a terrorist organization, nothing to do with voting.

Again, Your Honor, plaintiffs don't have any basis to attach those actions to voting intimidation.

Second, plaintiffs do not meaningfully distinguish the consistent rejection of Section 11(b) claims against the President's 2016 campaign, which involved claims very similar to ones plaintiffs are making here.

Now, to be sure, Your Honor, we acknowledge that those cases did not involve a sitting President, or, you know, a suggestion that law enforcement would be deployed to the polls.

But plaintiffs still don't address the fundamental flaws found in all of those cases from 2016. Mainly, the relatively weak connection between the speech at issue and direct threats or coercive or intimidating action.

And we do agree with plaintiffs on one thing: Context does matter. And here, that context tips sharply against this Section 11(b) violation.

First, with respect to the notion of the deployment of sheriffs and law enforcement, I think it's important to note that that statement was made in response to a question during a talk show; it was not targeted to any particular individual.

Second, plaintiffs do not address, much less explain, how the clear bar posed by 18 U.S.C. 592 against the deployment of federal law enforcement officers could

make the President's statement rise to the level of a credible threat or voter intimidation.

Third, plaintiffs' speculation that the President could issue pardons for violations of Section 592 is entirely divorced both from the President's statements and the actions of the Justice Department.

And the fact that DHS has asserted that it has teams ready to go in the event of potential civil unrest has no relations to plaintiffs' speculations concerning that DHS be sending law enforcement into polling places. That has to do with the civil unrest that occurs after voting.

And although by no means dispositive, Your Honor -- and we're not suggesting it is -- the fact that early voting has been going on for a number of weeks and that 75 million Americans have mailed in their votes already, suggests that any fear plaintiffs have is objectively unreasonable.

I know my time is running short, Your Honor. So at that point, I would just respectfully request that the Court deny plaintiffs' motion for a TRO and a Rule 57 motion for a speedy declaration and just stand ready to answer any questions the Court may have.

THE COURT: Thank you very much.

I'll hear from Mr. Norris.

MR. NORRIS: Thank you, Your Honor.

Just a few points to add to the government's well-articulated presentation.

First, the point about the plaintiffs' absence of a private right of action here also applies to the claims against the President. They do not have a private right of action for equitable relief against anyone under this statute.

The then-Judge Kavanaugh's opinion in the *Johnson* case, which is cited in our brief, disposes of this issue fairly easily. The *Johnson* case explains that when the statute paints no right of action and, in fact, specifies another method of enforcement, as it does here by allowing the Attorney General to bring actions for voter intimidation, that is definitive evidence that there is no implied private right of action for plaintiffs, and that defeats the claims against all defendants.

Secondly, the President, even in his individual capacity, is entitled to absolute presidential immunity from this suit. The capacity that the President is sued in is not decisive, and this Court, recognizing the *Jackson versus Bush* case, individual capacity suits still implicate immunity when the target is the President's official acts.

And here, the plaintiffs are focused entirely on the Presidency and the Office of the President, not him as an individual. They give this away on pages 6 and 7 of

their reply brief.

The plaintiffs' entire case relies on the proposition that these statements are threatening and intimidating because they are made by the sitting President. They may not be if it was an ordinary individual, but they are because he is the President. And their liability allegations all turn on you looking at the office he holds. Those are precisely the types of things you cannot file a civil lawsuit of a sitting President about, as the Court recognizes in *Jackson* and the Supreme Court recognizes in *Nixon versus Fitzgerald* and the Supreme Court recognized in *Newdow versus Roberts*.

And the last point I'll make is, it appears to me that the plaintiffs, for purposes of Article III standing, are now relying exclusively on the organizational plaintiffs. I suspect that's because the individual plaintiffs have already voted or plan to vote on Election Day, despite these statements.

But regardless, the organization also lacks standing. I would point this Court to the *Fair Employment Council* case from the D.C. Circuit in 1994; it's an opinion from Judge Williams. It explains that you do not get to make diversion of resources theories of standing if all your argument is that you have moved one line item of your budget from one place to another.

So in other words, the organization alleges that they have spent more on voter outreach and answering voters' concerns. But that is not a diversion of resources away from their mission; that is their mission. So there has been no actual diversion that could support Article III standing.

And with that, Your Honor, we ask that you deny the motion for a TRO.

THE COURT: Very good.

Mr. Fein, you have five minutes.

MR. FEIN: Thank you, Your Honor.

Just briefly, I'd like to address irreparable harm here.

The loss of constitutional freedoms for even minimal periods of time unquestionably constitutes irreparable injury. And someone who's intimidated from voting won't get another chance after Tuesday.

The balance of harm, which, in the case of the government defendants, merges with the public interest, also favors the relief, because the defendants have little or no legally cognizable interest in deploying armed men at the polls or any of the other things that are at issue in our request for relief.

And as to the public interest, many Americans justifiably believe that this is the greatest nation on

earth. And because our great Republic has been a beacon of hope for democracy, that legacy is being not just threatened but dishonored by a systematic project of voter intimidation.

The defendants have raised procedural arguments, to argue that this Court is powerless to act. But if we win the requested declaratory and injunctive relief, it would send a clear message that this Court is not powerless to stop the most significant voter intimidation campaign in modern history.

With respect to intent, the text of the statute, looking at the text alone, it does not contain an intent requirement.

And the thinking of *Bostock* is that if we look at the plain text of the statute, that provides us all the information that we need. And since there's no intent requirement written into it, that should end that question.

So with respect to standing, I'm certainly not conceding the individual plaintiffs' standing. The individual plaintiffs are actually helping others to vote, which is a protected activity under Section 11(b) of the Voting Rights Act.

And with respect to the nexus between the conduct at issue and voting, it is true that some of the actions that were explained in the factual-background section of our

memo in support of the motions date back to earlier than the height of the campaign season, and that is to establish context and the background.

And as the *United States versus McLeod* decision said, you can't understand the intimidation without being familiar with the context of the events happening contemporaneously, in that case, it was in Selma, Alabama. But in the decision from the Southern District of New York just last night reiterated that importance of understanding the context.

And that's why the actions of Barr and Wolf, who certainly can be enjoined, they're not subject to any form of Presidential immunity from injunctions, that's why there are relevant and meaningful relief to be accorded against them.

And finally, with respect to even the question of whether the President himself cannot be enjoined, even if that is correct or even if injunction is possible but inadvisable, in addition to the two other official defendants, declaratory judgment is certainly available, and the *Knight First Amendment Institute versus Trump* case is a perfect example of using that.

And as my time is running, I would just like to address the point raised by counsel for the President in his individual capacity, claiming that nobody has a private

right of action under Section 11(b). That's, again, rejected by the Southern District of New York just last night in the decision that we've supplied. And case after case, including the cases that the government just mentioned from 2016, even though the plaintiffs there lost, they have a private right of action under Section 11(b).

It is true that a distinction between those 2016 cases and the present case is the fact that we're no longer talking about actions of a political campaign exclusively, but actions of the President of the United States, whose words, whose threats people take more seriously. Justice Jackson said that in *The Steel Seizure* case, that the President of the United States has a voice that people take extremely seriously, and the Supreme Court, Justice Roberts' also conceded that in *Trump v. Hawaii*.

So to wrap up, Your Honor, this systematic project of voter intimidations would not only horrify the Founding Fathers, but it's in clear violation of Section 11(b) of the Voting Rights Act. This Court has the power to and should stop this voter intimidation campaign, and plaintiffs respectfully request that the Court grant the motion. Thank you.

THE COURT: Well, as is the practice of this Court and all the other judges on our court, in the case of TROs, we announce our discussion on the spot; we don't issue a

written opinion.

This case has more holes than a piece of Swiss cheese, and it's no surprise, as a result, that it's being at the 11th hour and 58th minute in the electoral season of our country this year.

As far as this Court can discern, the Court lacks jurisdiction. The plaintiffs have not demonstrated sufficiently standing; it's way too speculative. There is no demonstration, adequate demonstration of likelihood of success on the merits or of irreparable harm, for that matter. The balance of equities are not demonstrated to be in favor of the plaintiff, as opposed to the defendant.

And as to the President, there's serious concern as to whether or not there is jurisdiction; and if there were even a colorable chance of it, that it should be granted under circumstances of this kind where essentially you're seeking some kind of -- to enjoin the President from speaking during a presidential campaign.

So for all those reasons, the Court will deny the TRO. The case will be moot as of Tuesday. The Court expects that there will be a voluntary motion to dismiss it after Tuesday. If there isn't a joint motion to voluntarily dismiss it, the Court will expect the government to file a motion to dismiss it after Tuesday, because it will be moot after Tuesday.

Thank you very much, Counsel. Have a good day.

(Proceedings concluded at 4:47 p.m.)

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Please note: This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

Date:__November 13, 2020_____ /S/__William P. Zaremba______

William P. Zaremba, RMR, CRR

DEPUTY CLERK: [3] 3/3 4/4 4/14
MR. FEIN: [26] 3/15 4/1 5/14 5/20 5/25 6/6 6/21 7/13 7/17 9/17 9/23 10/17 10/21 10/24 11/2 11/10 12/1 13/7 14/5 15/23 16/1 17/9 17/17 18/3 18/10 29/11
MR. GARDNER: [3] 4/7 5/17 18/12
MR. NORRIS: [5] 4/17 4/23 5/4 5/8 26/25
THE COURT: [35]

/

/S [1] 34/24

0

0234 [1] 1/15
02459 [1] 1/15

1

100 [1] 5/5
11 [14] 9/13 11/4 14/9 17/3 17/11 20/13 21/4 21/17 25/4 25/17 30/21 32/1 32/6 32/18
1100 [1] 2/5
11th [1] 33/4
1250 [1] 1/19
13 [1] 34/24
1320 [1] 1/14
15 [4] 5/12 5/16 14/2 18/8
1600 [1] 2/10
17 [1] 20/2
18 U.S.C [1] 25/24
19 [1] 34/20
1909 [1] 1/20
1965 [1] 9/4
1994 [1] 28/21

2

20 [1] 5/10
20-3030 [1] 1/5
20-CV-3030 [1] 3/10
20001 [1] 2/17
20005 [1] 2/5
20036 [1] 1/20
2016 [5] 22/15 25/5 25/12 32/5 32/7
202 [3] 1/20 2/6 2/17
2020 [2] 1/6 34/24
22209 [1] 2/11
243-9423 [1] 2/11
244-0234 [1] 1/15
29 [1] 1/6

3

300 [1] 1/19
3030 [2] 1/5 3/10
305-7583 [1] 2/6
3249 [1] 2/17
333 [1] 2/16
354-3249 [1] 2/17

4

405 [1] 1/14
446-1909 [1] 1/20
4:09 [1] 1/6
4:47 [1] 34/2

5

57 [1] 26/20
58th [1] 33/4
592 [2] 25/24 26/4

6

617 [1] 1/15
6503 [1] 2/16

7

700 [1] 2/10
702 [4] 10/18 10/22 11/6 11/20
703 [1] 2/11
75 [1] 26/15
7583 [1] 2/6

9

9423 [1] 2/11

A

Abady [1] 3/22
about [9] 9/19 9/21 21/19 24/6 24/13 24/13 27/3 28/9 32/9
above [1] 34/18
above-titled [1] 34/18
absence [1] 27/3
absentee [2] 13/1 17/2
absolute [1] 27/18
access [1] 9/1
accommodate [1] 13/1
accordance [1] 7/23
accorded [1] 31/14
according [1] 10/6
Accordingly [1] 22/8
acknowledge [1] 25/7
act [9] 9/4 9/14 11/5 15/22 20/21 22/21 30/6 30/22 32/19
acting [4] 9/8 10/3 24/2 24/5
action [19] 3/10 7/24 9/14 16/3 20/10 20/13 20/16 20/23 21/4 21/9 21/12 21/17 25/14 27/4 27/6 27/11 27/15 32/1 32/6
actions [11] 8/17 11/16 17/13 24/17 25/2 26/6 27/13 30/24 31/11 32/9 32/10
activated [1] 16/9
activities [2] 12/13 23/4
activity [1] 30/21
acts [2] 24/2 27/22
actual [3] 12/24 23/25 29/5
actually [2] 14/16 30/20
add [2] 7/12 27/1
addition [2] 22/19 31/19
address [6] 11/23 19/14 25/11 25/23 29/12 31/24
addressed [2] 9/20 19/13
addressing [1] 13/23
adequate [1] 33/9
advocating [1] 5/1
affirmed [1] 21/10
afraid [5] 12/15 12/16 12/17 12/18 15/12
after [10] 6/19 6/22 9/5 19/16 26/11 29/17 32/3 33/22 33/24 33/25
afternoon [5] 3/3 3/4 3/9 4/7 4/17
AG [1] 8/7
AG Barr [1] 8/7
again [5] 11/4 23/8 24/12 25/1 32/1
against [18] 5/13 9/14 10/14 10/15 19/15 20/6 20/8 20/13 21/6 21/9 21/17 25/4 25/17 25/24 27/5 27/6 27/16 31/14
agencies [1] 10/16
agency [1] 18/22
agents [2] 8/8 8/15
ago [1] 7/22
agree [1] 25/15
ahead [1] 7/16
aided [1] 2/19
aiding [1] 9/11
al [4] 1/3 1/7 3/11 3/12
Alabama [1] 31/7
all [17] 4/3 4/24 5/9 5/16 6/25 8/6 13/9 13/18 13/25 23/22 25/12 27/16 28/7 28/23 30/15 32/24 33/19
All right [1] 5/16
allegations [1] 28/7
allege [3] 21/24 23/3 24/6
alleged [3] 24/2 24/17 24/22
alleges [1] 29/1
alleging [3] 16/17 16/17 21/6
allow [1] 22/18
allowing [1] 27/12
alone [4] 24/4 24/11 24/15 30/12
already [2] 26/16 28/17
also [5] 3/19 27/4 28/19 29/19 32/15
although [1] 26/12
always [1] 14/10
Amendment [1] 31/21
America [1] 16/21
Americans [2] 26/15 29/24
Amnesty [1] 23/19
analysis [1] 7/12
announce [2] 7/19 32/25
announced [1] 16/8
announcement [1] 24/24
another [4] 19/12 27/12 28/25 29/17
answer [1] 26/21
answering [2] 12/12 29/2
Antifa [3] 24/7 24/13 24/24
any [16] 5/2 7/6 8/17 9/10 9/15 12/3 13/12 17/23 21/20 23/3 25/1 25/21 26/16 26/21 29/22 31/12
anyone [2] 9/11 27/6
anything [5] 7/12 21/21 24/6 24/10 24/15
anyway [1] 13/15
APA [4] 10/18 10/22 18/18 18/25
apart [1] 5/3
apparatus [1] 15/5
APPEARANCES [2] 1/12 1/22
appears [1] 28/13
applied [2] 20/6 21/16
applies [3] 11/11 17/2 27/4
apply [4] 11/17 19/11 19/22 23/14
are [32] 3/20 6/5 7/20 11/16 12/15 12/17 13/2 13/19 14/1 14/10 16/11 16/12 16/16 16/16 16/20 18/8 19/9 21/21 22/10 23/6 23/21 25/6 27/23 28/3 28/4 28/6 28/8 28/15 29/22 30/20 31/14 33/11
aren't [2] 13/10 13/24
argue [4] 19/22 20/8 23/11 30/6
argued [1] 20/3
argues [1] 11/19
arguing [1] 22/10
argument [2] 5/12 28/24
arguments [5] 4/25 5/2 5/2 18/16 30/5
arises [1] 9/23
Arlington [1] 2/11
armed [4] 8/12 12/16 16/4 29/21
around [1] 12/12
arrest [1] 14/23
Article [5] 21/23 22/9 22/12 28/14 29/5
Article III [4] 22/9 22/12 28/14 29/5
articulated [1] 27/2
as [42]
As you [1] 24/1
aside [1] 11/10
ask [2] 15/20 29/7
assert [1] 22/1
asserted [1] 26/7
Assistance [1] 22/18
attach [2] 19/15 25/2
attempt [4] 9/10 17/4 17/7 22/4
attempted [2] 15/3 19/6
attempting [1] 9/10
attorney [11] 4/18 6/15 15/21 16/3 17/8 17/10 17/22 21/6 24/3 24/12 27/13
Attorney General [9] 6/15 15/21 16/3 17/8 17/10 17/22 24/3 24/12 27/13
attributing [1] 7/2
authority [4] 11/12 11/13 11/17 14/8
available [1] 31/20
Avenue [2] 1/19 2/16
aware [1] 21/14
away [3] 7/1 27/25 29/3

B

back [1] 31/1
background [2] 30/25 31/3
bad [1] 16/14
balance [2] 29/18 33/11
balked [1] 23/1
ballots [4] 8/16 8/17 13/1 13/2
bar [1] 25/24
bare [2] 19/7 19/9
Barr [6] 6/15 8/7 15/21 16/4 17/8 31/11
baseless [1] 14/23
basis [11] 6/19 6/21 13/5 18/1 18/2 18/7 19/1 19/14 20/8 22/12 25/1
be [45]
beacon [1] 30/1
bear [2] 7/21 15/7
because [16] 9/24 10/8 11/24 12/9 12/17 13/21 18/3 21/24 22/23 23/11 28/4 28/6 28/16 29/20 30/1 33/24
been [7] 12/25 13/8 13/17 16/8 26/14 29/5 30/1
before [4] 1/10 6/22 17/22 22/2
behalf [3] 4/9 4/19 18/13
being [10] 7/25 13/4 13/11 13/20 13/22 15/8 16/8 30/2 31/5 33/3
believe [3] 7/13 16/12 29/25
Ben [1] 3/21
Benavides [1] 3/23
best [1] 13/6
better [1] 17/19
between [8] 6/18 7/10 7/14 10/7 15/21 25/13

**B**

**between... [2]** 30/23 32/7
**beyond [1]** 11/16
**Black [1]** 24/14
**block [3]** 7/25 8/16 9/1
**Blvd [1]** 2/10
**Bonifaz [1]** 3/21
**Bostock [2]** 10/5 30/14
**both [6]** 6/5 6/6 17/16 21/23 23/5 26/5
**Boys [1]** 24/23
**Branch [1]** 2/4
**brief [10]** 5/6 18/15 19/13 20/14 20/18 21/2 21/19 22/13 27/9 28/1
**briefing [1]** 6/24
**briefly [1]** 29/12
**Brinckerhoff [1]** 3/22
**bring [4]** 6/25 7/4 8/25 27/13
**bringing [1]** 10/14
**brought [2]** 7/21 15/6
**Browning [1]** 14/25
**budget [2]** 12/11 28/24
**Bureau [1]** 15/6
**burning [1]** 14/11
**Bush [1]** 27/21

**C**

**call [2]** 14/14 20/11
**calls [2]** 13/18 13/23
**cam [2]** 2/12 4/18
**came [1]** 16/21
**Cameron [1]** 2/9
**campaign [7]** 15/1 25/5 30/9 31/2 32/9 32/20 33/18
**can [8]** 5/7 5/10 5/10 5/16 15/11 21/19 31/12 33/6
**can't [5]** 17/15 18/19 19/1 23/7 31/5
**cannot [6]** 20/11 22/12 23/16 23/23 28/8 31/17
**capacity [12]** 4/5 4/10 4/15 4/20 18/14 18/21 19/16 20/7 27/18 27/19 27/21 31/25
**Carolina [1]** 20/18
**case [37]**
**cases [5]** 14/22 25/8 25/12 32/4 32/8
**Cassell [1]** 3/21
**Cassell-Stiga [1]** 3/21
**cast [1]** 12/17
**cause [3]** 20/12 21/9 21/12
**Centre [1]** 1/14
**certainly [5]** 11/12 21/15 30/18 31/12 31/20
**Certified [1]** 2/14
**certify [1]** 34/16
**challenge [1]** 22/17
**challenging [1]** 20/1
**chance [3]** 22/6 29/17 33/15
**channels [2]** 8/23 15/8
**charged [1]** 5/13
**cheese [1]** 33/3
**chief [1]** 12/8
**chose [2]** 6/25 7/4
**Chuck [1]** 4/23
**Circuit [7]** 10/2 19/17 21/1 21/10 22/11 22/14 28/21
**Circuit's [1]** 19/20
**circumstances [2]** 6/24 33/16
**cite [4]** 19/16 20/11 20/14 20/18
**cited [2]** 21/15 27/9
**citizen [1]** 15/11
**citizens [3]** 7/22 15/7 16/20
**citizenship [3]** 22/19 22/24 23/2
**city [1]** 15/11
**civil [5]** 2/4 3/10 26/8 26/11 28/9
**claim [4]** 19/11 20/15 23/13 23/25
**claiming [2]** 19/7 31/25
**claims [5]** 24/13 25/4 25/5 27/4 27/16
**clear [4]** 22/10 25/24 30/8 32/18
**Clements [1]** 3/21
**clerked [1]** 17/19
**Clinton [1]** 18/24
**cmehri [1]** 1/21
**co [1]** 3/17
**co-counsel [1]** 3/17
**coerce [5]** 9/9 15/15 15/17 15/18 16/17
**coercion [1]** 16/17
**coercive [1]** 25/14
**cognizable [1]** 29/21
**colleague [2]** 4/6 4/12
**colleagues [1]** 3/14
**collection [1]** 14/18
**color [4]** 9/8 10/4 10/7 10/8
**colorable [1]** 33/15
**COLUMBIA [2]** 1/1 3/6
**come [3]** 3/8 16/1 16/3
**command [1]** 16/7
**comments [1]** 24/13
**Commission [1]** 22/18
**communications [1]** 8/23
**communicative [1]** 15/7
**comparable [1]** 23/3
**completely [1]** 19/25
**computer [1]** 2/19
**computer-aided [1]** 2/19
**computers [1]** 14/11
**conceded [3]** 20/11 22/6 32/15
**conceding [1]** 30/19
**concern [4]** 6/12 6/18 14/23 33/13
**concerned [1]** 20/20
**concerning [2]** 24/19 26/9
**concerns [1]** 29/3
**concluded [1]** 34/2
**conduct [6]** 9/25 12/9 13/16 13/20 19/6 30/23
**conducting [1]** 23/4
**confer [1]** 23/10
**Congress [11]** 9/5 10/6 10/10 10/11 10/12 17/10 17/22 18/3 20/24 23/11 23/16
**conjectural [1]** 13/6
**Connecticut [1]** 1/19
**connection [3]** 15/21 23/13 25/13
**consequences [2]** 7/5 17/12
**consistent [1]** 25/4
**CONSOVOY [2]** 2/9 4/18
**consovoymccarthy.com [1]** 2/12
**constitutes [1]** 29/15
**Constitution [1]** 2/16
**constitutional [1]** 29/14
**contain [1]** 30/12
**contemporaneously [1]** 31/7
**contemporary [1]** 14/12
**contend [1]** 18/18
**contends [1]** 23/5
**contest [1]** 23/9
**context [5]** 25/16 25/16 31/3 31/6 31/10
**continue [1]** 11/22
**CONTINUED [1]** 2/1
**continuing [1]** 23/6
**contrary [1]** 20/18
**control [2]** 15/6 15/19
**controlling [1]** 17/23
**copy [2]** 22/25 23/1
**correct [3]** 11/15 31/18 34/17
**could [9]** 5/6 6/22 18/25 19/10 20/6 20/16 25/25 26/4 29/5
**Council [1]** 28/21
**counsel [8]** 3/4 3/13 3/17 4/4 4/13 4/14 31/24 34/1
**counted [3]** 8/1 8/24 12/18
**counting [1]** 8/16
**countries [2]** 16/21 16/25
**country [4]** 12/12 12/23 13/18 33/5
**course [2]** 12/3 20/22
**court [46]**
**Court's [2]** 10/4 20/22
**courthouse [2]** 2/15 24/9
**courts [1]** 21/3
**cover [2]** 5/1 7/7
**COVID [2]** 13/1 34/20
**COVID-19 [1]** 34/20
**create [1]** 16/14
**created [2]** 20/24 21/8
**creates [2]** 9/14 13/21
**credible [1]** 26/2
**criminal [4]** 13/13 14/18 20/1 20/2
**cross [2]** 8/3 8/4
**crosses [1]** 14/11
**CRR [2]** 34/16 34/25
**current [1]** 20/22
**CV [2]** 1/5 3/10
**Cyrus [2]** 1/18 3/17

**D**

**D.C [5]** 1/5 1/20 2/5 2/17 19/18
**D.C. [5]** 19/17 19/20 22/11 22/14 28/21
**D.C. Circuit [4]** 19/17 22/11 22/14 28/21
**D.C. Circuit's [1]** 19/20
**daily [1]** 13/5
**date [2]** 31/1 34/24
**day [4]** 12/24 16/9 28/18 34/1
**days [1]** 7/1
**deal [1]** 24/20
**debt [1]** 14/17
**decided [2]** 9/17 9/22
**decision [8]** 10/5 14/6 21/10 22/15 22/17 31/4 31/8 32/3
**decisive [1]** 27/20
**declaration [2]** 20/8 26/21
**declarations [2]** 12/8 23/5
**declaratory [6]** 6/8 8/3 19/23 20/6 30/7 31/20
**deemed [1]** 17/12
**defeats [1]** 27/16
**defendant [2]** 13/14 33/12
**defendants [13]** 1/8 2/2 4/9 8/6 8/14 12/10 13/11 18/14 27/16 29/19 29/20 30/5 31/20
**defense [1]** 5/1
**definition [4]** 13/19 15/14 15/15 19/10
**definitive [1]** 27/14
**delaying [1]** 8/10
**delivered [1]** 8/1
**delivery [2]** 8/16 8/18
**democracy [1]** 30/2
**demonstrate [1]** 17/4
**demonstrated [3]** 8/11 33/7 33/11
**demonstration [2]** 33/9 33/9
**deny [3]** 26/20 29/7 33/19
**DEPARTMENT [3]** 2/3 4/9 26/6
**deploy [2]** 6/1 7/18
**deployed [2]** 16/9 25/9
**deploying [3]** 8/8 15/1 29/21
**deployment [3]** 16/4 25/19 25/25
**designated [1]** 24/24
**despite [2]** 13/11 28/18
**detrimental [1]** 14/13
**DHS [3]** 24/8 26/7 26/9
**did [6]** 4/21 10/21 21/5 21/12 21/24 25/8
**didn't [5]** 17/24 17/25 19/14 22/24 22/25
**different [1]** 15/15
**direct [1]** 25/14
**directly [1]** 18/16
**disagree [1]** 19/20
**discern [1]** 33/6
**disclaim [1]** 24/22
**discussing [1]** 14/3
**discussion [1]** 32/25
**dishonored [1]** 30/3
**disinformation [1]** 15/9
**dismiss [3]** 33/21 33/23 33/24
**dismissed [1]** 21/8
**disposes [1]** 27/9
**dispositive [1]** 26/12
**distinction [1]** 32/7
**distinguish [2]** 10/7 25/3
**distinguishes [1]** 16/24
**DISTRICT [10]** 1/1 1/1 1/11 3/5 3/6 14/7 19/18 21/8 31/8 32/2
**diversion [4]** 22/10 28/23 29/3 29/5
**divert [3]** 12/7 12/10 13/22
**Division [1]** 2/4
**divorced [1]** 26/5
**do [23]** 5/2 5/13 7/12 9/10 9/21 12/20 13/4 13/16 16/14 20/5 23/9 24/10 24/15 24/17 24/21 24/23 24/25 25/3 25/15 25/23 26/11 27/5 28/22
**do you [3]** 5/2 12/20 13/4
**Do you understand [1]** 5/13
**doctrine [3]** 10/13 11/18 19/3
**documents [2]** 22/24 23/2
**does [6]** 8/2 8/4 22/3 25/16 27/12 30/12
**doesn't [3]** 13/12 18/7 23/3
**doing [3]** 4/11 12/13 12/14
**dominate [1]** 15/19
**don't [8]** 6/21 11/9 11/23 19/3 24/5 25/1 25/11 32/25
**DONALD [2]** 1/7 3/11
**done [1]** 14/10

**D**

**down [3]** 6/9 9/16 17/16
**draft [1]** 17/24
**drives [1]** 22/23
**due [1]** 12/9
**Dugan [5]** 11/11 11/17 11/20 19/3 19/10
**during [3]** 25/21 33/18 34/19

**E**

**earlier [2]** 14/25 31/1
**early [1]** 26/14
**earth [1]** 30/1
**easily [1]** 27/10
**education [5]** 1/3 3/11 12/5 16/19 23/6
**effect [1]** 15/9
**effective [1]** 14/14
**efforts [1]** 23/6
**either [1]** 12/24
**election [7]** 7/1 7/8 12/14 12/24 16/9 22/18 28/17
**elections [1]** 14/14
**electoral [1]** 33/4
**electors [1]** 15/2
**else [1]** 9/11
**Email [6]** 1/16 1/21 1/21 2/6 2/7 2/12
**emphasize [1]** 15/14
**employees [1]** 8/15
**employing [1]** 16/10
**Employment [1]** 28/20
**enacted [1]** 23/11
**encounter [1]** 12/16
**end [1]** 30/17
**ends [1]** 12/4
**enemies [1]** 8/12
**enforce [1]** 20/23
**enforcement [12]** 6/1 7/19 8/8 14/21 16/11 16/25 24/20 25/9 25/19 25/25 26/10 27/12
**engage [1]** 9/25
**enjoin [1]** 33/17
**enjoined [2]** 31/12 31/17
**enough [1]** 23/12
**entered [1]** 15/1
**entire [1]** 28/2
**entirely [2]** 26/5 27/23
**entitled [2]** 16/12 27/18
**entry [1]** 13/5
**equitable [4]** 10/19 11/7 19/15 27/6
**equities [1]** 33/11
**essentially [2]** 9/24 33/16
**establish [5]** 22/1 23/7 23/22 23/23 31/2
**et [4]** 1/3 1/7 3/11 3/12
**eve [1]** 7/1
**even [16]** 10/1 11/10 14/25 17/25 19/6 22/4 22/8 22/9 24/16 27/17 29/14 31/16 31/17
33/18 32/6 33/15
**event [1]** 26/8
**events [1]** 31/6
**ever [2]** 9/16 9/20
**every [5]** 12/23 13/2 13/7 15/11 16/22
**everybody [2]** 14/21 16/11
**evidence [4]** 8/11 17/6 21/20 27/14
**example [1]** 31/22
**exceeds [1]** 11/12
**except [2]** 8/10 11/7
**exception [2]** 11/11 11/17
**exclusively [2]** 28/15 32/9
**excuse [1]** 17/14
**executive [2]** 20/3 24/19
**executives [1]** 12/8
**exist [1]** 18/7
**exists [1]** 20/13
**expansive [1]** 14/9
**expect [1]** 33/23
**expects [1]** 33/21
**experience [1]** 9/6
**explain [1]** 25/24
**explained [3]** 9/12 14/6 30/25
**explains [2]** 27/10 28/22
**explicitly [3]** 9/17 9/20 21/3
**expression [1]** 16/13
**expressly [2]** 18/24 21/12
**extremely [1]** 32/14

**F**

**fact [12]** 6/10 12/22 13/4 13/10 13/19 20/17 21/25 24/5 26/7 26/13 27/11 32/8
**factual [1]** 30/25
**factual-background [1]** 30/25
**failure [1]** 24/22
**fair [2]** 4/25 28/20
**fairly [1]** 27/10
**FAMILIA [8]** 1/3 3/11 12/5 13/17 13/25 16/19 21/22 23/3
**familiar [1]** 31/6
**far [1]** 33/6
**Fathers [1]** 32/18
**favor [1]** 33/12
**favors [1]** 29/20
**fear [3]** 13/5 16/15 26/16
**fearful [1]** 13/20
**fears [1]** 21/21
**federal [23]** 2/4 4/4 4/9 8/8 8/15 9/24 11/13 11/16 15/5 17/19 18/13 18/22 20/2 20/13 20/21 20/23 21/9 21/17 22/18 22/20 24/9 24/19 25/25
**feel [1]** 23/13
**Fein [11]** 1/13 3/16 4/1 5/10 5/18 5/21 6/2 9/13 10/11 17/16 29/10
**few [3]** 7/22 8/4 27/1
**fig [1]** 15/12
**file [2]** 28/8 33/23
**finally [3]** 8/20 8/24 31/16
**findjustice.com [2]** 1/21 1/21
**fine [1]** 5/24
**first [7]** 5/19 6/7 8/21 21/22 25/18 27/3 31/21
**Fitzgerald [1]** 28/11
**five [8]** 5/7 5/11 5/22 7/1 7/4 14/2 18/8 29/10
**flaws [1]** 25/12
**flesh [1]** 12/9
**Floyd [1]** 15/25
**focused [1]** 27/23
**followed [1]** 6/8
**following [1]** 16/7
**forced [1]** 13/22
**foregoing [1]** 34/17
**form [2]** 13/1 31/12
**former [1]** 17/21
**forums [1]** 22/20
**found [1]** 25/12
**founded [1]** 11/19
**Founders [1]** 15/10
**Founding [1]** 32/17
**four [2]** 7/1 7/3
**Franklin [1]** 18/23
**fraud [1]** 21/7
**free [3]** 1/13 14/14 23/16
**free-standing [1]** 23/16
**freedoms [1]** 29/14
**freespeechforpeople.org [1]** 1/16
**frightened [1]** 16/22
**frustrated [1]** 12/7
**full [1]** 15/7
**FUND [4]** 1/3 3/11 12/5 16/19
**fundamental [1]** 25/11

**G**

**Gardner [5]** 2/2 4/8 5/16 18/11 18/13
**general [10]** 6/15 11/6 15/21 16/3 17/8 17/10 17/22 24/3 24/12 27/13
**George [1]** 15/25
**get [4]** 5/18 19/14 28/22 29/17
**gets [1]** 20/10
**Gillian [1]** 3/21
**Gilligan [2]** 2/2 4/12
**give [1]** 27/25
**go [5]** 5/19 7/16 12/15 12/15 26/8
**Go ahead [1]** 7/16
**God [1]** 3/7
**going [3]** 12/16 13/9 26/14
**good [6]** 3/3 3/3 4/7
4/17 29/9 34/1
**got [1]** 6/3
**government [9]** 11/19 15/5 15/8 20/21 21/14 21/17 29/19 32/4 33/23
**government's [1]** 27/1
**governments [1]** 20/20
**governor [1]** 15/1
**grant [1]** 32/21
**granted [2]** 6/10 33/16
**granting [1]** 23/17
**grants [1]** 7/6
**great [1]** 30/1
**greatest [1]** 29/25
**grounds [2]** 21/8 21/11
**groups [2]** 9/7 24/22

**H**

**hac [1]** 3/20
**had [8]** 6/24 6/25 12/7 12/7 12/10 16/22 20/5 21/11
**happened [1]** 16/6
**happening [1]** 31/6
**harm [3]** 29/12 29/18 33/10
**has [28]** 9/15 9/17 9/20 9/21 11/13 12/4 12/6 12/7 13/8 13/17 14/20 15/9 16/3 20/12 22/6 22/11 23/19 26/7 26/7 26/8 26/10 26/14 29/4 30/1 31/25 32/13 32/19 33/2
**have [48]**
**haven't [1]** 19/6
**having [1]** 12/15
**Hawaii [1]** 32/15
**he [6]** 7/22 8/25 17/24 17/24 28/6 28/7
**he'd [1]** 8/21
**He's [1]** 24/22
**hear [2]** 18/11 26/24
**heard [1]** 12/22
**hearing [3]** 1/10 3/10 34/19
**height [1]** 31/2
**held [3]** 20/12 22/11 23/19
**help [1]** 12/8
**helping [1]** 30/20
**here [18]** 3/2 4/19 10/14 11/16 12/3 12/10 13/20 14/16 14/19 15/13 19/11 19/14 25/6 25/16 27/4 27/12 27/23 29/13
**hill [1]** 15/11
**him [1]** 27/24
**himself [4]** 3/14 4/5 4/15 31/17
**his [13]** 3/14 4/5 4/15 4/20 7/19 15/11 18/7 18/21 19/15 24/19 24/24 27/17 31/24
**history [4]** 20/15 20/17 20/20 30/10
**hold [2]** 6/2 6/2
**holds [1]** 28/7
**holes [1]** 33/2
**home [1]** 15/2
**Homeland [1]** 6/15
**Honor [30]** 3/3 3/9 3/16 4/2 4/7 5/4 5/14 5/17 5/20 7/13 7/17 9/23 10/24 11/11 12/1 14/5 17/17 18/12 19/13 21/18 23/23 24/1 25/1 25/7 26/13 26/18 26/25 29/7 29/11 32/16
**HONORABLE [3]** 1/10 3/6 3/8
**hope [1]** 30/2
**hoped [1]** 15/10
**horrify [1]** 32/17
**horses [1]** 14/10
**hour [1]** 33/4
**House [1]** 8/22
**how [7]** 9/19 9/21 10/6 10/12 12/20 13/4 25/24
**hypothetically [1]** 7/7

**I**

**I believe [1]** 7/13
**I can [1]** 21/19
**I don't think [1]** 11/9
**I just [1]** 12/22
**I know [2]** 19/13 26/18
**I think [6]** 5/4 18/16 19/2 21/19 22/3 25/19
**I want [1]** 15/14
**I'd [1]** 29/12
**I'll [3]** 18/15 26/24 28/13
**I'm [6]** 3/17 4/18 4/19 6/17 7/10 30/18
**identify [3]** 3/14 4/5 4/15
**idle [1]** 16/11
**Ill [5]** 21/23 22/9 22/12 28/14 29/5
**imagine [1]** 5/6
**immigration [1]** 7/21
**immunity [12]** 10/12 10/13 10/19 11/7 11/21 18/17 18/19 18/25 19/4 27/18 27/22 31/13
**impact [2]** 6/12 6/13
**impediments [1]** 23/4
**impeding [1]** 8/9
**implicate [1]** 27/21
**implicitly [3]** 9/19 9/21 9/22
**implied [3]** 20/12 20/16 27/15
**impliedly [1]** 21/3
**importance [1]** 31/9
**important [4]** 9/4 12/2 22/3 25/20
**improper [1]** 8/10
**impunity [1]** 11/18
**inability [1]** 19/22
**inadvisable [1]** 31/19
**inapposite [1]** 19/25
**incident [1]** 15/25
**include [2]** 14/11 18/3

**I**

**including [3]** 7/7 15/5 32/4
**Indeed [1]** 23/4
**indicate [1]** 20/19
**individual [15]** 4/15 4/20 12/19 13/8 15/19 23/8 25/22 27/17 27/21 27/25 28/5 28/16 30/19 30/20 31/25
**individuals [1]** 8/25
**information [1]** 30/16
**inhibited [1]** 22/22
**injunction [2]** 20/8 31/18
**injunctions [1]** 31/13
**injunctive [3]** 19/23 20/5 30/7
**injuries [1]** 23/21
**injury [3]** 21/25 23/9 29/16
**inquiry [1]** 12/4
**instead [1]** 12/13
**Institute [1]** 31/21
**insufficient [2]** 23/10 23/21
**intend [1]** 17/12
**intent [9]** 17/4 17/6 17/11 17/24 18/4 21/11 30/11 30/12 30/16
**intention [1]** 16/14
**interest [3]** 29/19 29/21 29/24
**interfere [2]** 8/16 9/2
**International [1]** 23/20
**interpret [1]** 10/5
**intimidate [11]** 9/1 9/9 11/13 15/15 15/16 16/14 17/4 17/5 17/7 17/7 21/12
**intimidated [7]** 13/8 13/10 13/11 13/19 13/25 23/13 29/16
**intimidating [5]** 13/12 13/17 15/9 25/14 28/4
**intimidation [22]** 9/6 13/15 13/24 14/10 14/13 14/19 14/23 15/4 16/18 21/7 23/12 24/2 24/4 24/11 24/15 25/2 26/2 27/14 30/4 30/9 31/5 32/20
**intimidations [1]** 32/17
**investigation [1]** 21/7
**invokes [1]** 14/22
**involve [1]** 25/8
**involved [2]** 22/17 25/5
**involves [1]** 14/17
**irrelevant [1]** 19/21
**irreparable [3]** 29/12 29/16 33/10
**is [86]**
**isn't [2]** 6/10 33/22
**issue [14]** 11/24 11/24 12/10 13/20 16/1 19/12 21/13 22/9 25/13 26/4 27/9 29/22 30/24 32/25
**it [41]**
**it's [14]** 5/18 7/1 11/20 12/2 16/6 22/6 22/10 23/12 25/19 28/21 32/18 33/3 33/3 33/8
**item [1]** 28/24
**items [1]** 8/4
**its [6]** 10/16 12/7 12/8 22/7 23/4 23/5
**itself [2]** 10/16 23/25

**J**

**Jackson [3]** 27/20 28/10 32/12
**James [2]** 2/2 4/12
**james.gilligan [1]** 2/8
**John [1]** 3/20
**Johnson [2]** 27/8 27/10
**joined [1]** 3/17
**joint [1]** 33/22
**Jonathan [1]** 3/22
**Josh [1]** 4/8
**Joshua [1]** 2/2
**joshua.e.gardner [1]** 2/7
**Joyner [1]** 14/25
**judge [7]** 1/11 3/2 4/17 10/23 14/13 27/8 28/22
**Judge Leon [1]** 3/2
**judges [1]** 32/24
**judgment [2]** 8/3 31/20
**judicial [1]** 14/14
**jurisdiction [2]** 33/7 33/14
**jurisprudence [1]** 20/23
**just [16]** 8/18 10/7 12/22 13/2 14/7 16/6 18/16 26/19 26/21 27/1 29/12 30/2 31/9 31/23 32/2 32/4
**justice [6]** 2/3 4/9 13/13 26/6 32/11 32/14
**justifiably [1]** 29/25
**justified [1]** 20/3

**K**

**Katzenbach [3]** 17/9 18/6 20/19
**Katzenbach's [1]** 17/10
**Kavanaugh's [1]** 27/8
**Kerry [3]** 10/18 10/21 11/2
**kind [5]** 10/14 11/25 23/20 33/16 33/17
**Knight [1]** 31/21
**know [7]** 6/25 13/16 13/17 17/19 19/13 25/9 26/18
**knows [2]** 10/6 10/12

**L**

**La [1]** 16/19
**lack [1]** 21/23
**lacks [2]** 28/19 33/6
**Laird [1]** 23/20
**largely [1]** 19/21
**Larson [5]** 11/11 11/17 11/20 19/3 19/10
**Larson-Dugan [5]** 11/11 11/17 11/20 19/3 19/10
**last [5]** 7/3 14/7 28/13 31/9 32/2
**late [1]** 12/14
**Latin [1]** 16/21
**law [18]** 6/1 7/18 8/8 9/8 10/4 10/7 10/8 11/19 14/20 16/10 16/25 20/24 23/21 24/20 25/9 25/19 25/25 26/10
**lawful [2]** 8/2 8/24
**laws [1]** 7/24
**lawsuit [1]** 28/9
**lawsuits [1]** 10/14
**lead [2]** 22/25 23/1
**League [2]** 22/14 22/22
**left [1]** 14/2
**legacy [1]** 30/2
**legally [1]** 29/21
**legislation [2]** 17/24 17/25
**legislative [3]** 20/14 20/17 20/19
**LEON [4]** 1/10 3/2 3/7 4/17
**less [1]** 25/23
**let [5]** 15/20 21/22 24/4 24/10 24/15
**letting [1]** 23/1
**level [1]** 26/1
**liability [1]** 28/6
**Lieder [2]** 1/17 3/18
**like [6]** 4/23 5/22 14/22 24/7 29/12 31/23
**likelihood [3]** 14/4 23/23 33/9
**limit [1]** 8/17
**limitations [1]** 34/21
**limited [1]** 6/24
**line [4]** 3/20 8/3 8/4 28/24
**listening [1]** 3/19
**little [2]** 14/3 29/20
**live [1]** 12/24
**Lives [1]** 24/14
**local [2]** 9/7 20/20
**longer [1]** 32/8
**look [1]** 30/14
**looking [2]** 28/7 30/12
**loss [1]** 29/14
**lost [1]** 32/5
**lot [1]** 16/19
**lower [1]** 16/16

**M**

**MA [1]** 1/15
**made [7]** 13/20 15/22 18/16 21/25 24/2 25/20 28/4
**mail [5]** 7/23 8/18 8/24 12/17 13/2
**mail-in [2]** 8/24 13/2
**mailed [1]** 26/15
**Mainly [1]** 25/12
**majority [1]** 24/1
**make [6]** 5/2 8/23 15/12 26/1 28/13 28/23
**makes [1]** 18/17
**making [1]** 25/6
**manage [1]** 13/11
**managed [1]** 13/14
**many [2]** 24/16 29/24
**Marissa [1]** 3/23
**Marissa Benavides [1]** 3/23
**Marrero [1]** 14/13
**Massachusetts [1]** 18/23
**matter [5]** 23/21 24/14 25/16 33/11 34/18
**Matthew [1]** 3/21
**maximalist [1]** 11/18
**maximum [1]** 15/18
**may [8]** 5/5 8/17 11/22 13/23 13/24 14/13 26/22 28/5
**Maybe [1]** 16/21
**MCCARTHY [2]** 2/9 4/19
**McLeod [2]** 14/23 31/4
**me [6]** 4/12 15/20 17/14 18/5 21/22 28/13
**mean [1]** 13/12
**meaning [1]** 10/6
**meaningful [1]** 31/14
**meaningfully [1]** 25/3
**means [5]** 14/12 15/18 16/13 16/14 26/12
**mechanical [1]** 2/18
**meet [1]** 13/19
**meets [1]** 22/4
**Mehri [4]** 1/18 1/18 3/17 3/17
**memo [1]** 31/1
**men [2]** 12/16 29/21
**mentioned [1]** 32/4
**merges [1]** 29/19
**Merit [1]** 2/14
**merits [4]** 11/15 14/4 23/24 33/10
**message [1]** 30/8
**method [1]** 27/12
**MFV [1]** 22/3
**MFV's [1]** 22/9
**MI [7]** 1/3 3/11 12/5 13/17 13/25 21/22 23/3
**Mi Familia [1]** 3/11
**Michael [2]** 1/17 3/18
**Michael Lieder [1]** 3/18
**militarized [1]** 7/21
**military [1]** 16/22
**million [1]** 26/15
**millions [1]** 7/22
**minimal [1]** 29/15
**minute [1]** 33/4
**minutes [11]** 5/7 5/10 5/11 5/12 5/16 5/22 14/2 14/3 18/8 18/8 29/10
**missing [1]** 7/10
**mission [3]** 12/7 29/4 29/4
**misunderstanding [1]** 6/17
**mlieder [1]** 1/21
**mobilized [1]** 16/9
**mobilizing [1]** 7/20
**modern [3]** 14/10 14/12 30/10
**months [2]** 7/4 7/22
**moot [3]** 6/11 33/20 33/24
**more [6]** 5/12 13/12 14/13 29/2 32/11 33/2
**Morris [1]** 4/21
**most [3]** 7/2 9/3 30/9
**mostly [2]** 15/25 16/1
**motion [7]** 26/20 26/20 29/8 32/21 33/21 33/22 33/24
**motions [4]** 1/10 3/10 3/20 31/1
**moved [1]** 28/24
**movement [1]** 24/14
**Mr [2]** 4/21 4/25
**Mr. [11]** 5/10 5/16 5/18 6/2 9/13 10/11 17/16 18/11 18/13 26/24 29/10
**Mr. Fein [7]** 5/10 5/18 6/2 9/13 10/11 17/16 29/10
**Mr. Gardner [3]** 5/16 18/11 18/13
**Mr. Norris [1]** 26/24
**much [3]** 25/23 26/23 34/1
**must [1]** 20/24
**my [5]** 4/12 5/6 17/15 26/18 31/23
**Myself [1]** 4/1

**N**

**narrow [1]** 8/4
**nation [1]** 29/25
**nation's [1]** 9/3
**national [2]** 16/23 22/20
**natural [1]** 17/12
**near [1]** 8/9
**necessary [1]** 8/11
**need [4]** 5/2 19/4 22/8 30/16
**needed [1]** 9/3
**new [5]** 14/7 14/16 16/20 31/8 32/2
**New York [4]** 14/7 14/16 31/8 32/2
**Newby [1]** 22/14
**Newdow [1]** 28/12
**Newton [1]** 1/15
**next [6]** 6/18 6/19 7/10 7/14 8/18 18/11
**nexus [2]** 24/3 30/23
**Nicholas [1]** 18/6
**night [3]** 14/7 31/9 32/3
**Ninth [3]** 10/2 21/1

## N

**Ninth... [1]** 21/10
**Nixon [2]** 19/24 28/11
**no [29]** 1/5 3/10 7/13 9/8 9/17 9/20 10/3 11/12 13/15 15/12 17/11 19/14 20/7 21/5 21/9 21/14 21/15 22/6 24/3 26/9 26/12 27/11 27/14 29/5 29/20 30/16 32/8 33/3 33/9
**nobody [1]** 31/25
**none [2]** 24/10 24/14
**normal [1]** 8/2
**normally [1]** 12/14
**Norris [6]** 2/9 4/18 4/22 4/23 4/25 26/24
**not [47]**
**note [4]** 12/2 24/1 25/20 34/19
**nothing [5]** 20/5 24/17 24/21 24/23 24/25
**notice [1]** 14/8
**noting [1]** 16/6
**notion [2]** 18/24 25/18
**November [1]** 34/24
**now [17]** 3/6 6/2 6/18 7/10 7/14 12/24 13/3 13/22 14/11 17/21 20/25 22/2 22/3 22/13 22/17 25/7 28/15
**NPR [1]** 12/22
**nullifying [1]** 15/19
**number [1]** 26/14
**numbers [1]** 13/2
**numerous [1]** 15/2
**NW [3]** 1/19 2/5 2/16

## O

**objectively [2]** 13/16 26/17
**obstruction [1]** 13/13
**obviously [1]** 6/7
**occurred [2]** 6/14 34/19
**occurring [1]** 6/14
**occurs [1]** 26/11
**October [1]** 1/6
**odds [1]** 19/24
**office [2]** 27/24 28/7
**officer [1]** 11/12
**officers [2]** 11/16 25/25
**official [12]** 2/15 4/5 4/10 8/22 11/13 15/8 18/14 18/21 19/16 20/7 27/22 31/19
**officials [6]** 9/7 9/15 9/25 10/15 20/13 21/9
**often [1]** 22/24
**okay [3]** 6/4 7/15 17/15
**Olagues [4]** 9/12 10/2 20/25 21/5
**one [9]** 9/3 9/20 12/3 15/12 19/20 22/6 25/15 28/24 28/25
**ones [2]** 13/25 25/6
**only [3]** 7/1 9/25 32/17
**opening [1]** 5/12
**opinion [5]** 10/1 19/20 27/8 28/21 33/1
**opportunists [2]** 24/9 24/20
**opposed [2]** 10/7 33/12
**opted [1]** 18/3
**order [3]** 3/8 8/7 24/19
**ordering [1]** 8/15
**ordinary [1]** 28/5
**Oregon [1]** 24/8
**organization [6]** 12/6 13/22 24/7 24/25 28/19 29/1
**organizational [4]** 12/6 13/21 22/15 28/15
**original [1]** 23/5
**other [8]** 8/10 11/8 13/24 16/25 29/1 29/22 31/19 32/24
**others [1]** 30/20
**otherwise [5]** 7/25 9/2 9/9 10/4 23/18
**our [13]** 9/3 15/7 16/7 16/24 19/22 20/18 27/9 29/22 30/1 30/25 32/24 32/25 33/5
**out [2]** 6/3 12/9
**outreach [2]** 23/6 29/2
**outset [1]** 6/4
**over [2]** 7/3 13/18
**overcome [1]** 13/23
**overlap [2]** 5/5 5/5
**overwhelming [1]** 24/1

## P

**p.m [2]** 1/6 34/2
**page [1]** 21/2
**pages [1]** 27/25
**paints [1]** 27/11
**pandemic [1]** 34/20
**papers [1]** 3/19
**pardons [1]** 26/4
**part [1]** 23/16
**particular [3]** 8/12 11/5 25/22
**parties [1]** 4/4
**party [2]** 22/1 22/5
**passed [1]** 9/5
**pending [1]** 3/20
**people [6]** 1/13 12/15 16/20 17/12 32/11 32/13
**per [1]** 14/19
**percent [1]** 5/5
**percentage [1]** 12/11
**perfect [1]** 31/22
**period [1]** 7/7
**periods [1]** 29/15
**person [3]** 9/8 9/10 10/3
**personnel [1]** 24/8
**pertaining [1]** 8/11
**pertains [1]** 8/20
**PI [7]** 6/5 6/8 6/11 6/19 6/22 6/22 7/6
**piece [1]** 33/2
**place [3]** 7/3 8/12 28/25
**places [9]** 6/1 7/19 8/9 9/1 9/1 14/21 16/11 17/1 26/10
**plain [2]** 10/6 30/15
**plaintiff [7]** 3/13 3/16 3/25 12/6 19/13 23/18 33/12
**plaintiff's [1]** 22/4
**plaintiffs [33]** 1/4 1/13 5/21 12/3 18/16 18/18 19/2 19/6 20/7 20/11 20/25 21/11 21/15 21/20 23/8 23/11 23/23 25/1 25/3 25/6 25/11 25/15 25/23 26/16 27/15 27/23 28/14 28/16 28/17 30/20 32/5 32/20 33/7
**plaintiffs' [7]** 19/19 26/3 26/9 26/20 27/3 28/2 30/19
**plan [1]** 28/17
**plate [1]** 22/7
**pleadings [3]** 6/13 6/17 7/3
**please [5]** 3/8 3/13 4/5 4/15 34/19
**PLLC [3]** 1/18 2/9 4/19
**plummeted [1]** 22/23
**point [6]** 11/9 26/19 27/3 28/13 28/20 31/24
**points [2]** 23/9 27/1
**police [1]** 16/23
**political [1]** 32/9
**polling [11]** 6/1 7/19 8/9 8/12 9/1 9/1 12/25 14/21 16/11 17/1 26/10
**polls [3]** 12/16 25/10 29/22
**Portland [1]** 24/8
**portrayal [1]** 24/13
**portraying [1]** 24/7
**posed [1]** 25/24
**possibility [1]** 14/17
**possible [1]** 31/18
**possibly [2]** 18/20 19/11
**potential [2]** 22/23 26/8
**potentially [1]** 6/8
**power [2]** 15/8 32/19
**powerful [1]** 8/4
**powerless [2]** 30/6 30/8
**practice [1]** 32/23
**pre [1]** 12/24
**pre-election-day [1]** 12/24
**precisely [1]** 28/8
**precluded [1]** 11/8
**present [1]** 32/8
**presentation [2]** 4/11 27/2
**presented [1]** 21/20
**Presidency [1]** 27/24
**President [34]** 4/14 4/19 5/25 6/15 7/18 8/6 8/21 14/20 16/2 18/20 18/21 19/1 19/12 19/15 19/23 20/1 20/6 20/9 24/16 25/8 26/3 27/5 27/17 27/19 27/24 28/4 28/6 28/9 31/17 31/24 32/10 32/13 33/13 33/17
**President Trump [4]** 4/19 8/6 8/21 16/2
**President's [5]** 16/10 25/5 26/1 26/5 27/22
**presidential [3]** 27/18 31/13 33/18
**presiding [1]** 3/7
**principally [1]** 22/13
**principles [1]** 11/6
**Prisons' [1]** 15/6
**private [10]** 9/14 20/10 20/23 21/4 21/16 27/4 27/5 27/15 31/25 32/6
**privilege [1]** 20/3
**pro [1]** 3/20
**problem [1]** 7/9
**problems [1]** 7/14
**procedural [1]** 30/5
**Procedure [1]** 20/3
**proceedings [4]** 1/10 2/18 34/2 34/18
**produced [1]** 2/19
**Programs [1]** 2/4
**prohibited [1]** 8/8
**prohibition [1]** 14/9
**project [2]** 30/3 32/16
**proof [1]** 22/19
**proper [1]** 8/2
**proposition [4]** 19/17 21/2 21/16 28/3
**prosecutions [1]** 14/24
**protect [1]** 24/8
**protected [1]** 30/21
**protests [2]** 24/9 24/21
**Proud [1]** 24/23
**provided [1]** 14/7
**provides [2]** 9/8 30/15
**prudential [2]** 21/24 22/5
**public [5]** 3/20 8/23 12/20 29/19 29/24
**public-communications [1]** 8/23
**publicly [1]** 13/4
**published [1]** 10/1
**purpose [1]** 8/9
**purposes [3]** 8/10 19/21 28/14

## Q

**Quaid [4]** 10/17 10/21 10/23 11/2
**question [5]** 9/18 9/23 25/21 30/17 31/16
**questions [2]** 12/12 26/22
**quickly [1]** 20/10

## R

**raised [4]** 9/18 10/1 30/5 31/24
**rarely [1]** 9/24
**rather [3]** 11/5 14/11 19/7
**reach [2]** 21/12 22/8
**ready [2]** 26/8 26/21
**Realtime [1]** 2/14
**reason [1]** 16/22
**reasons [2]** 23/22 33/19
**rebuttal [4]** 5/11 5/13 5/23 18/9
**receiving [1]** 13/18
**recently [1]** 11/3
**recognition [1]** 19/2
**recognized [4]** 10/17 10/20 21/3 28/11
**recognizes [2]** 28/10 28/10
**recognizing [1]** 27/20
**record [6]** 3/14 4/6 4/16 12/23 13/2 34/17
**recorded [1]** 2/18
**redirected [1]** 18/24
**redress [1]** 9/3
**refer [2]** 20/25 21/1
**regard [1]** 17/23
**regardless [1]** 28/19
**register [1]** 22/20
**Registered [1]** 2/14
**registration [3]** 22/21 22/22 22/23
**reiterated [1]** 31/9
**rejected [1]** 32/2
**rejection [1]** 25/4
**related [2]** 15/25 24/6
**relates [1]** 10/14
**relations [1]** 26/9
**relatively [2]** 11/2 25/13
**relevant [1]** 31/14
**reliability [1]** 8/18
**reliance [2]** 18/1 18/2
**relief [15]** 6/8 8/5 8/20 9/2 10/19 11/7 14/15 19/15 19/23 20/6 27/6 29/20 29/23 30/7 31/14
**relies [1]** 28/2
**rely [2]** 18/6 22/13
**relying [1]** 28/15
**remotely [1]** 34/21
**repeatedly [1]** 22/11
**repel [1]** 8/12
**reply [6]** 16/7 20/14 21/2 22/4 22/13 28/1
**reported [1]** 13/5
**reporter [5]** 2/13 2/14 2/14 2/15 17/15
**reporting [2]** 12/21 34/21
**representing [1]** 14/1
**Republic [3]** 15/10 16/24 30/1
**request [6]** 8/7 8/14 8/20 26/19 29/23 32/21
**requested [1]** 30/7

**R**

**required [1]** 21/25
**requirement [5]** 17/11 18/4 22/21 30/13 30/17
**requirements [3]** 22/5 22/19 23/17
**requires [1]** 19/5
**reserve [2]** 5/11 5/22
**resonates [1]** 17/1
**resources [5]** 12/7 13/22 22/11 28/23 29/3
**respect [12]** 10/22 11/4 11/7 12/19 18/20 18/25 19/12 25/18 30/11 30/18 30/23 31/16
**respectfully [2]** 26/19 32/21
**respond [1]** 18/15
**responding [1]** 20/4
**response [2]** 19/19 25/20
**restrain [1]** 15/18
**restrained [3]** 8/15 8/22 8/25
**result [2]** 6/14 33/3
**resurrect [1]** 19/11
**rfein [1]** 1/16
**RICHARD [2]** 1/10 3/7
**right [20]** 4/3 4/24 5/9 5/16 6/3 9/14 12/23 13/3 20/10 20/16 21/4 21/16 23/12 23/17 27/4 27/5 27/11 27/15 32/1 32/6
**rights [9]** 9/4 9/14 11/5 15/22 20/21 20/23 22/1 30/22 32/19
**riot [1]** 15/6
**riot-control [1]** 15/6
**rise [1]** 26/1
**RMR [2]** 34/16 34/25
**Roberts [1]** 28/12
**Roberts' [1]** 32/14
**robocall [1]** 14/17
**Ron [2]** 4/1 5/21
**Ronald [2]** 1/13 3/16
**Room [1]** 2/16
**Rule [2]** 20/2 26/20
**ruled [1]** 9/16
**Rules [1]** 20/2
**running [2]** 26/18 31/23
**Russoniello [1]** 21/1

**S**

**said [5]** 14/13 17/10 23/15 31/5 32/12
**Sam [1]** 3/22
**same [3]** 7/20 17/2 17/16
**save [1]** 3/7
**say [6]** 4/21 4/25 9/21 13/13 18/7 19/3
**saying [1]** 13/7
**says [1]** 10/3
**se [1]** 14/19
**season [3]** 12/14 31/2 33/4
**Second [2]** 25/3 25/23
**Secondly [1]** 27/17
**Secretary [9]** 6/16 8/7 15/22 16/4 16/8 17/8 17/9 24/3 24/5
**section [18]** 9/13 10/18 10/22 11/4 11/6 11/20 14/9 17/11 21/4 21/17 25/4 25/17 26/4 30/21 30/25 32/1 32/6 32/18
**security [2]** 6/15 16/23
**seeking [5]** 6/5 6/6 7/16 8/3 33/17
**segment [1]** 5/6
**Seizure [1]** 32/12
**Selma [1]** 31/7
**send [3]** 14/20 16/25 30/8
**sending [2]** 24/8 26/10
**SENIOR [1]** 1/11
**sense [1]** 18/17
**sensitive [1]** 23/2
**separate [1]** 5/2
**serious [1]** 33/13
**seriously [2]** 32/11 32/14
**session [1]** 3/6
**set [1]** 12/25
**setting [1]** 11/10
**settled [1]** 23/16
**shall [1]** 9/9
**Shapiro [1]** 3/22
**sharply [1]** 25/16
**sheriffs [3]** 9/7 14/20 25/19
**short [1]** 26/18
**should [7]** 7/9 14/3 17/19 18/6 30/17 32/19 33/15
**show [4]** 19/6 21/24 22/4 25/21
**showed [1]** 21/23
**showing [2]** 19/5 21/25
**shown [1]** 21/11
**significant [2]** 5/5 30/9
**significantly [1]** 22/21
**similar [1]** 25/6
**similarly [2]** 24/12 24/16
**simple [1]** 22/10
**simply [1]** 16/13
**since [3]** 17/14 17/21 30/16
**single [2]** 13/7 20/12
**sir [1]** 3/25
**sit [1]** 15/11
**sitting [3]** 25/8 28/4 28/9
**situation [1]** 15/13
**SKALET [2]** 1/18 3/18
**Slow [1]** 6/9
**so [25]** 6/10 7/4 7/9 7/16 9/10 9/23 11/15 11/19 12/13 13/8 13/16 15/2 16/10 16/25 19/1 21/14 22/5 23/6 23/22 26/18 29/1 29/4 30/18 32/16 33/19
**solve [2]** 7/9 7/14
**some [6]** 11/8 12/9 13/10 13/23 30/24 33/17
**somehow [3]** 18/18 19/24 20/15
**someone [1]** 29/16
**something [3]** 6/3 7/11 16/14
**sometimes [1]** 9/7
**sorry [1]** 17/9
**South [1]** 20/18
**Southern [3]** 14/6 31/8 32/2
**sovereign [9]** 10/12 10/13 10/18 11/6 11/21 18/17 18/19 18/25 19/4
**speak [1]** 17/15
**speaking [3]** 3/13 3/25 33/18
**specific [4]** 8/11 17/4 17/6 17/24
**specifically [1]** 8/21
**specifies [1]** 27/11
**speculation [1]** 26/3
**speculations [1]** 26/9
**speculative [5]** 13/6 21/21 23/9 23/21 33/8
**speech [2]** 1/13 25/13
**speed [1]** 8/18
**speedy [1]** 26/21
**spend [1]** 14/3
**spent [1]** 29/2
**Spokeo [1]** 23/15
**spot [1]** 32/25
**squads [1]** 7/21
**square [2]** 12/20 13/4
**St [1]** 1/14
**staff [1]** 12/11
**stage [1]** 12/14
**stand [1]** 26/21
**standing [25]** 11/24 12/2 12/4 13/21 21/18 21/23 21/24 22/1 22/5 22/9 22/12 22/15 23/7 23/10 23/14 23/16 23/18 23/22 28/14 28/20 28/23 29/6 30/18 30/19 33/8
**start [2]** 18/17 21/22
**state [7]** 7/24 9/7 10/7 12/23 13/3 15/2 20/20
**statement [4]** 15/23 15/24 25/20 26/1
**statements [11]** 6/14 7/2 8/23 15/21 15/24 16/1 24/2 24/17 26/5 28/3 28/18
**STATES [20]** 1/1 1/11 2/3 3/5 3/7 4/8 5/25 8/13 9/15 9/16 10/15 10/15 13/3 13/8 14/22 17/22 18/21 31/4 32/10 32/13
**stations [1]** 12/25
**statute [11]** 9/5 10/3 11/8 15/16 18/4 19/8 19/9 27/7 27/11 30/11 30/15
**statutes [1]** 9/4
**statutorily [1]** 23/17
**statutory [4]** 11/12 11/13 11/16 13/19
**stay [1]** 15/2
**Ste [1]** 1/14
**Steel [1]** 32/12
**stenography [1]** 2/18
**step [1]** 6/7
**Stiga [1]** 3/21
**still [3]** 21/20 25/11 27/21
**stop [3]** 17/15 30/9 32/20
**straighten [1]** 6/3
**Street [1]** 2/5
**streets [1]** 15/7
**strictly [1]** 11/8
**stronger [1]** 14/16
**subject [4]** 10/9 10/11 31/12 34/20
**subjected [1]** 15/3
**subordinates [1]** 7/19
**subpoena [1]** 20/2
**substantial [2]** 11/24 12/11
**success [4]** 14/4 22/6 23/24 33/10
**such [3]** 9/16 21/5 24/22
**sue [2]** 22/16 23/17
**sued [1]** 27/19
**sufficiently [1]** 33/8
**suggesting [1]** 26/13
**suggestion [1]** 25/9
**suggests [1]** 26/16
**suit [2]** 21/6 27/19
**Suite [2]** 1/19 2/10
**suits [1]** 27/21
**summons [1]** 14/18
**supplemental [3]** 12/8 14/8 23/5
**supplied [1]** 32/3
**supplies [1]** 18/18
**support [6]** 19/16 21/2 21/15 22/15 29/5 31/1
**supports [1]** 20/15
**supposition [1]** 20/15
**supremacist [1]** 9/6
**Supreme [9]** 9/16 10/4 19/17 20/22 23/15 23/19 28/10 28/11 32/14
**Supreme Court [4]** 9/16 19/17 28/11 32/14
**Supreme Court's [1]** 20/22
**sure [2]** 18/19 25/7
**surprise [1]** 33/3
**suspect [1]** 28/16
**Swan [1]** 18/24
**swift [1]** 14/14
**Swiss [1]** 33/2
**systematic [2]** 30/3 32/16

**T**

**tactical [1]** 7/20
**take [5]** 7/5 7/24 17/15 32/11 32/13
**takes [2]** 21/18 23/25
**taking [2]** 8/17 16/19
**talk [2]** 24/6 25/21
**talking [1]** 32/9
**target [1]** 27/22
**targeted [1]** 25/21
**Tatum [1]** 23/20
**teaches [1]** 10/5
**teams [3]** 7/20 15/6 26/8
**technological [1]** 34/21
**technology [1]** 14/12
**telephonic [2]** 1/10 3/9
**telling [1]** 18/5
**terms [1]** 15/16
**terror [1]** 15/1
**terrorist [2]** 24/7 24/25
**testify [1]** 13/15
**testimony [3]** 17/10 17/21 18/6
**text [3]** 30/11 30/12 30/15
**than [5]** 5/12 13/12 16/16 31/1 33/2
**Thank [16]** 3/15 3/24 4/1 5/8 5/17 5/20 7/17 12/1 14/5 18/10 18/12 26/23 26/25 29/11 32/22 34/1
**Thank you [12]** 3/15 3/24 4/1 5/17 5/20 7/17 14/5 18/12 26/23 26/25 29/11 32/22
**Thank you very much [1]** 34/1
**that [173]**
**that's [12]** 5/24 6/13 6/23 11/4 11/9 13/4 16/24 24/6 28/16 31/11 31/13 32/1
**their [21]** 4/5 4/10 7/24 7/25 10/6 12/11 12/17 13/24 17/13 18/14 20/14 21/2 21/21 22/13 22/15 23/1 26/15 28/1 28/6 29/4 29/4
**them [9]** 5/3 12/3 15/12 16/12 17/1 22/24 22/25 23/12 31/15
**then [4]** 11/15 13/15 19/2 27/8
**then-Judge Kavanaugh's [1]** 27/8
**theories [1]** 28/23
**there [23]** 5/4 5/5 7/6 11/20 12/22 13/2 13/15 13/24 17/11 19/14 20/16 21/14 21/16 22/21 27/14 29/4 31/13 32/5 33/8 33/14 33/14 33/21 33/22
**there's [2]** 30/16 33/13
**therefore [3]** 19/10

**T**

**therefore... [2]** 20/7 34/20
**these [8]** 6/23 8/14 12/18 13/23 16/16 23/20 28/3 28/18
**they [31]** 7/20 7/21 7/23 8/7 12/13 16/21 16/22 17/23 19/20 19/22 20/11 20/14 20/15 20/19 21/1 21/23 21/24 22/10 22/13 23/6 23/8 23/13 24/5 24/6 27/5 27/25 28/4 28/5 28/5 29/2 32/5
**they'll [1]** 7/24
**they're [8]** 11/8 12/15 12/16 12/18 13/9 16/8 19/7 31/12
**they've [1]** 12/10
**thing [2]** 21/5 25/15
**things [5]** 24/7 24/10 24/14 28/8 29/22
**think [9]** 5/4 6/21 7/9 11/9 18/16 19/2 21/19 22/3 25/19
**thinking [1]** 30/14
**third [3]** 22/1 22/5 26/3
**third-party [2]** 22/1 22/5
**this [41]**
**Thomas [1]** 2/9
**those [12]** 13/23 15/3 15/24 23/22 24/10 24/14 25/2 25/8 25/12 28/8 32/7 33/19
**though [1]** 32/5
**threat [3]** 16/13 16/25 26/2
**threaten [2]** 9/9 15/16
**threatened [3]** 13/14 14/20 30/2
**threatening [2]** 14/17 28/3
**threatens [3]** 6/1 7/18 7/22
**threats [4]** 16/10 16/12 25/14 32/11
**three [5]** 7/3 8/6 8/14 12/3 15/16
**thresholds [1]** 16/16
**through [1]** 3/19
**time [7]** 6/25 14/3 16/21 17/16 26/18 29/15 31/23
**timid [1]** 13/20
**tips [1]** 25/16
**titled [1]** 34/18
**today [1]** 4/11
**too [2]** 11/25 33/8
**took [1]** 7/3
**tools [1]** 14/9
**transcript [3]** 1/10 2/18 34/17
**transcription [1]** 2/19
**tree [1]** 15/12
**tremendous [1]** 15/9
**TRO [10]** 6/5 6/7 6/10 7/7 7/9 7/13 17/16 28/20 29/8 33/20
**troopers [1]** 15/2
**TROs [1]** 32/24
**true [2]** 30/24 32/7
**TRUMP [8]** 1/7 3/12 4/19 8/6 8/21 16/2 31/21 32/15
**try [2]** 7/23 18/15
**Tuesday [11]** 6/18 6/20 6/22 6/22 7/10 7/14 29/17 33/20 33/22 33/24 33/25
**turn [2]** 19/3 28/7
**turnout [1]** 12/23
**two [4]** 8/18 19/21 23/8 31/19
**twofold [1]** 19/20
**type [1]** 9/25
**types [1]** 28/8

**U**

**U.S [2]** 2/15 19/24
**U.S. [1]** 21/6
**U.S. Attorney [1]** 21/6
**U.S.C [1]** 25/24
**ultra [2]** 19/5 19/10
**under [18]** 6/23 9/8 10/4 11/20 11/20 15/11 16/7 17/3 20/2 20/13 20/22 21/4 21/17 27/6 30/21 32/1 32/6 33/16
**understand [5]** 5/13 6/13 17/16 19/19 31/5
**understanding [1]** 31/9
**UNITED [20]** 1/1 1/11 2/3 3/5 3/7 4/8 5/25 8/13 9/15 9/16 10/15 10/15 13/3 13/8 14/22 17/22 18/21 31/4 32/10 32/13
**United States [14]** 3/7 4/8 5/25 8/13 9/15 9/16 10/15 10/15 14/22 17/22 18/21 31/4 32/10 32/13
**units [2]** 16/5 16/7
**unless [2]** 6/17 7/10
**unprecedented [1]** 9/24
**unquestionably [1]** 29/15
**unreasonable [1]** 26/17
**unrest [2]** 26/8 26/11
**up [4]** 5/11 12/25 18/8 32/16
**upon [2]** 15/1 18/6
**urging [2]** 8/25 9/11
**us [5]** 17/16 20/10 21/18 23/25 30/15
**usdoj.gov [2]** 2/7 2/8
**use [4]** 5/11 18/1 22/20 24/19
**used [1]** 15/8
**uses [1]** 15/16
**using [2]** 8/22 31/22

**V**

**VA [1]** 2/11
**versus [15]** 3/11 10/18 10/21 11/2 14/22 14/25 18/23 19/24 20/19 20/25 27/20 28/11 28/12 31/4 31/21
**very [6]** 5/6 21/19 25/5 26/23 29/9 34/1
**via [2]** 14/8 14/23
**viable [1]** 19/1
**vice [1]** 3/20
**view [1]** 19/22
**vine [1]** 15/11
**violating [1]** 20/21
**violation [3]** 19/7 25/17 32/18
**violations [3]** 9/3 19/9 26/4
**violent [2]** 24/9 24/20
**vires [2]** 19/5 19/10
**voice [1]** 32/13
**voluntarily [1]** 33/22
**voluntary [1]** 33/21
**volunteers [2]** 22/25 23/1
**VOTA [8]** 1/3 3/11 12/5 13/17 13/25 16/19 21/22 23/3
**vote [10]** 7/23 9/10 9/11 13/9 13/11 15/3 17/25 23/12 28/17 30/20
**voted [1]** 28/17
**voter [14]** 14/10 14/12 14/23 21/7 21/7 22/20 22/22 26/2 27/13 29/2 30/3 30/9 32/17 32/20
**voter-fraud [1]** 21/7
**voters [17]** 7/23 8/10 9/2 9/6 11/14 12/12 13/10 13/18 13/23 13/24 16/12 22/2 22/14 22/20 22/22 22/24 23/1
**voters' [1]** 29/2
**votes [5]** 7/25 8/24 12/17 12/18 26/15
**voting [32]** 6/12 6/13 9/2 9/4 9/10 9/13 11/5 12/23 12/24 12/25 15/22 16/20 20/21 23/13 24/4 24/4 24/6 24/10 24/11 24/15 24/15 24/18 24/21 24/23 24/25 25/2 26/11 26/14 29/17 30/22 30/24 32/19
**VRA [1]** 21/8
**vs [1]** 1/6

**W**

**waive [1]** 10/12
**waived [1]** 10/18
**waiver [7]** 10/13 10/16 11/21 18/19 18/25 19/1 19/4
**waives [1]** 11/6
**want [3]** 7/12 15/14 18/25
**was [15]** 9/18 10/1 10/1 10/25 13/15 17/11 19/25 20/1 20/20 21/6 21/7 25/20 25/21 28/5 31/7
**Washington [4]** 1/5 1/20 2/5 2/17
**wasn't [1]** 13/12
**way [3]** 17/23 22/25 33/8
**we [25]** 3/9 6/21 6/22 8/7 8/14 8/20 10/5 12/2 13/12 13/16 13/17 14/19 16/7 19/3 19/16 20/18 21/22 25/7 25/15 29/7 30/6 30/14 30/16 32/25 32/25
**we'd [1]** 6/21
**We'll [1]** 18/11
**we're [10]** 6/6 8/3 10/9 10/11 11/15 13/7 16/17 16/17 26/13 32/8
**we've [5]** 6/3 6/24 6/25 14/7 32/3
**weak [1]** 25/13
**weapons [1]** 8/25
**weeks [2]** 8/19 26/14
**Welcome [1]** 4/13
**well [11]** 3/18 6/8 6/23 9/19 10/9 11/10 17/3 18/5 19/3 27/2 32/23
**well-articulated [1]** 27/2
**were [6]** 15/6 16/7 17/12 22/9 30/25 33/15
**what [11]** 6/19 10/20 10/23 10/25 10/25 14/19 15/20 15/24 16/24 18/1 22/10
**whatever [1]** 7/9
**whatsoever [1]** 24/4
**when [9]** 5/25 7/4 7/18 7/22 17/14 17/14 17/21 27/10 27/22
**where [9]** 8/10 10/1 11/7 11/11 14/25 15/11 16/22 20/19 33/16
**Where's [3]** 10/13 10/16 17/6
**whether [8]** 7/24 9/8 10/3 11/20 17/23 20/5 31/17 33/14
**which [12]** 12/6 14/7 14/23 19/13 19/21 20/1 21/6 22/11 25/5 27/9 29/18 30/21
**while [2]** 10/9 10/11
**white [2]** 8/22 9/6
**White House [1]** 8/22
**white-supremacist [1]** 9/6
**who [10]** 3/25 9/21 12/15 12/17 13/18 13/19 13/24 15/3 23/18 31/11
**who's [1]** 29/16
**whoa [2]** 6/9 6/9
**whose [2]** 32/10 32/11
**why [3]** 11/23 31/11 31/13
**will [13]** 3/13 3/25 4/11 4/14 5/12 7/7 8/24 15/19 33/19 33/20 33/21 33/23 33/24
**William [4]** 2/13 34/16 34/24 34/25
**Williams [1]** 28/22
**Wilson [1]** 2/10
**win [1]** 30/6
**without [2]** 23/12 31/5
**witness [2]** 13/14 13/14
**Wolf [9]** 6/16 8/7 15/22 16/4 16/8 17/8 24/3 24/5 31/11
**Women [2]** 22/14 22/22
**won't [3]** 7/6 12/18 29/17
**words [3]** 10/5 29/1 32/11
**works [1]** 16/20
**worried [1]** 12/12
**worth [1]** 16/6
**would [20]** 4/25 5/1 5/22 6/7 6/19 7/14 11/17 12/13 13/13 15/2 15/3 15/10 23/18 24/24 25/9 26/19 28/20 30/7 31/23 32/17
**wrap [1]** 32/16
**written [2]** 30/17 33/1

**Y**

**Yeah [3]** 5/15 6/23 11/23
**year [2]** 10/25 33/5
**years [1]** 9/5
**Yes [3]** 5/14 17/17 17/18
**York [4]** 14/7 14/16 31/8 32/2
**you [56]**
**You understand [1]** 17/16
**you'll [1]** 18/8
**you're [4]** 7/2 7/16 18/5 33/17
**your [46]**
**Your Honor [30]** 3/3 3/9 3/16 4/2 4/7 5/4 5/14 5/17 5/20 7/13 7/17 9/23 10/24 11/11 12/1 14/5 17/17 18/12 19/13 21/18 23/23 24/1 25/1 25/7 26/13 26/18 26/25 29/7 29/11 32/16

**Z**

**Zaremba [4]** 2/13 34/16 34/24 34/25